Case number 245490, Eugene Baker, et al. v. Blackhawk Mining, LLC, et al. Argument not to exceed 15 minutes per side. Mr. Pillersdorf, you may proceed. Good morning. Good morning, Judge. My name is Ned Pillersdorf. I'm an attorney in Prestonburg. I represent the appellants. I live in Appalachia. This case involves a flood event, a devastating flood event that at least two people died. And to call it a flood event, I think we need to be careful. Generally, when you hear of a flood event, we have a lot of rain. The Ohio River gets high. People get flooded. That's not what this flood event's about. It's about a torrent or tidal wave of water that came down from a mountain. And it wasn't even so much the volume of the water, but the velocity. The case we principally rely on is a Kentucky Supreme Court opinion called Hargis v. Bays. When that opinion came down, I would suggest it changed the landscape of Kentucky law, or maybe clarified it. Hargis v. Bays is not a complicated case. There's a regulation in Kentucky that if you're in a logging operation, there's a regulation that says you basically must tie your logs or have instruments in place that they don't roll off. In Hargis v. Bays, a log rolled off and killed this gentleman. And when the case got to the Kentucky Supreme Court, they said, you've alleged a regulation was violated. We agree the logging regulation was violated. And the Kentucky Supreme Court not only reversed the dismissal, they ordered that liability be established and sent it back to the lower court. Our argument is the same here. In this particular case, did the service mining company violate any Kentucky regulation? We think they did. Here are some of the numbers. Before we ask you, did you give any consideration to not even rely on regulations, just argue ordinary negligence here? What we're relying on, Your Honor, is KRS 446-07. No, but I'm asking, you're bringing a negligence per se claim, correct? Yes. Did you ever think about just alleging negligence without having to be dependent upon establishing a violation of a regulation? I mean, I think there's overwhelming evidence of negligence. But I think the clearest liability is was there something that barred you from bringing an ordinary negligence claim here, in addition to a negligence per se claim? I think we probably did allege negligence in the complaint. So you think you've alleged both here? We principally relied on the violation of regulation to prove the negligence. Right, I'm just trying to, I mean, one of the points here is that it seems like you have to have a final order of the agency to find a violation of a regulation. And you don't seem to have a final order here. And I'm just saying, why did you even go down that route? Why couldn't you just argue they were negligent without having to prove a final order in violation of a regulation? I'd like to address that. We think the suggestion that you need a final order is not the law. There was no final order in Hargis v. Bates. If you think about it logically, what happened in this case is Well, isn't that what the court held in Vanderbilt? They, the court, That you'd have to have a final order. The court seemed to think you needed a final order. Right. That's impractical. Well, isn't that what the law in Vanderbilt is? Our clients have no ability to make the cabinet take any action. Right, but I'm saying isn't that what the law says, though, that you have to have a final order? If that were the law, you could never bring one of these cases. Well, couldn't you just bring an ordinary negligence claim? Well, I think we pled that, Your Honor. OK. I mean, in this case, there were 16 mine inspection reports. There were six notice of violations. For two and a half years, the defendants did nothing to deal with the failure to reclaim and the issues with this pond that failed. The needle never moved. So the law in Kentucky is . . . I just want to shift to the causation question. You were talking about, I think, this Kentucky Supreme Court case, right? Right. Is that a case where they were able to say show causation without an expert? You know, the evidence of causation in this case, we think is obvious. When we took the deposition . . . You know, it's like Ray Sipsa. Is that going to be your point? Whether you want to call it Ray Sipsa or . . . When we took the deposition of the company representative, did you do simultaneous reclamation? What was your level of reclamation? He said 20 to 25 percent for the two and a half years in question. The needle never moved. He grudgingly acknowledged, yes, there's a safety aspect when you don't reclaim. And so what happened is you had barren landscape. You had a heavy rain, and the volume of water came down. In this case, we made clear in our brief, we hold the Kentucky Environmental Protection Cabinet just as responsible. They did no enforcement. In fact, the way they reacted to the six notices of violations . . . But isn't it possible the rain event can be . . . I'm sorry? Is it not possible the rain event can be so substantial that there's nothing any mining company . . . I mean, Noah's Ark, whatever you want to use as your hypothetical. Isn't it possible that a rain event can be so cataclysmic that that's why you have a causation problem? We unsuccessfully pointed that out to the district court. We mentioned the testimony and affidavit of Monica Fugate. What happened in this case is when this cascade of water came down, all of these frightened people ran up to the hills, and they said it continued to rain heavily after the damage was done, after the homes floated away, after the people floated away. So there's just a question of fact, how much rain fell after the damage was done? But why do you think . . . That's a question of fact that we didn't . . . We're not successful. So, like, the restatement on causation gives us its prototypical example. I'm sorry. The restatement on causation gives its prototypical example a dam that is negligently built and a 100-in-a-year flooding event that leads the dam to break. And the restatement suggests if even a competently built dam would have still broken and caused the damages, you can't recover. And I don't know that the one affidavit suggesting that there was flood and then more rain is enough to show that it was negligence that caused the injuries, rather than just the fact that this was an unprecedented rain event, which I think we all would agree on. I think you understand your question. I think the whole issue of causation is the regulation that says you must do simultaneous reclamation talks about public safety. That's not . . . That's about nuisance. That's not about causation. What's the evidence? Aside from the expert that was excluded, is your only evidence on causation Ms. Fugate's affidavit? I think the causation is obvious from the combination of the . . . It's not obvious. This is 100 . . . This was like 11 inches in a day. No matter how competently they would have reclaimed the land, what's the evidence that the flooding still would not have caused the harm? It's a question of did it exacerbate the flooding. If they had reclaimed and complied with the law, which says 90%, and they never got close to that, would the amount and velocity of water have been decreased? When the water came down . . . What's your evidence on that? You're just relying on the common sense notion that it was an open space, and so it's going to lead to more water. I mean, that's not particularly common sense. I'm not an expert on the way water runs. Well, let me just say, the mere fact that their representatives said we were at 20%, they acknowledge it's a safety regulation and that the water came down. And there's a significant question of fact is how much rain fell afterwards. We think it's completely irrelevant the amount of rain that fell after the event, after the damage was done. So they have their own expert that says it actually reduced the amount of rain because it leveled the mountain. So it's not going to run down as fast. And then once they say there's no genuine issue of material fact on causation, you have to point us to evidence to show that there might be. And your evidence, as far as I can tell, is just stating the facts of what happened? Well, no, the evidence is contained in the mine inspection reports, how much was required. That's the evidence of negligence, right? Why is that? I think it's a violation of a regulation. The regulation, for example, on the Pond 45, which is significant, that's the last pond. They were supposed to be at 2. It's supposed to have been 2 and 1⁄2 acres. Just before the flood event, they are supposed to continuously maintain that pond. Our expert says they didn't maintain it. The record said they didn't maintain it. And our expert said it exacerbated. So that goes to you need to duty breach causation damages. So you need duty breach causation damages. You've shown breach there. But why have you shown causation? Causation is obvious. If it's fully reclaimed, you don't get this amount of water coming down. Why is that obvious? It's an unprecedented flood event. Well, we would suggest the amount of rain is not unprecedented. I mean, for example, in Dr. Simonton's report, he said there were similar flood events before. And he said it had the same deficiencies in terms of failing to reclaim. Why don't you reserve full five minutes of rebuttal. Why don't you just be thinking about these causation questions? Because obviously, we're concerned about them. And we'll hear from the other side. Good morning. Good morning. Graham Morgan on behalf of the appellee Pine Branch. Chief Justice Sutton, Judge Murphy, Judge Bush, may it please the court. Causation decides this appeal. The court's analysis here should begin with the exclusion of appellant's expert, Scott Simonton. Under Rule 702 and Rule 26a. Because the appellants have no other competent evidence of causation or of evidence that Pine Branch's mining activities, rather than the 1,000-year flood event, caused any of their damages. The standard of review for those rulings is, of course, highly deferential. The appellants make no mention of your standard of review. But it applies not only to the way the district court assessed admissibility, but it applies to the district court's final ruling on admissibility. This court does not substitute its judgment for the judgment of the district court, unless this court is left with a definite and firm conviction that the district court committed a clear error of judgment. That did not happen here. The district court's analysis was sound. It correctly concluded that Simonton's report was an undeveloped expert disclosure that was unreliable for a number of reasons. It was based on untestable anecdotal evidence that could not be replicated. It was an improper extrapolation, particularly from the studies that were conducted outside of the River Canyon where the appellants live. It lacked scientific modeling or testing. It was not premised on sufficient facts or data. It had every red flag that the district courts are required to waive when they see a report like this. And that's been enforced recently in the commentary to the amendment to Rule 702. Simonton's failure to run any River Canyon-specific test rendered his opinions unreliable, because they failed to take into account the behavior of natural, complex, hydraulic systems just like River Caney, which is itself a three-mile-long dendritic drainage system that cuts through a complex terrain. What's wrong with the obvious point that your friend on the other side was making? So he didn't really rely on the expert in his presentation. He just said, if you don't upkeep your waters of body that are designed to store this water, it seems obvious that when there's a flood event, that it's going to be worse. And it's going to lead to more significant damage. I disagree that it would be obvious in a flood event like this. This is different than anything that Mr. Pillersdorf has argued might be a hypothetical example. They didn't plead an ordinary negligence claim. Even if they had, they still have to show causation. They would have to show a duty and how an ordinary reasonable mining company would have breached that duty, which they did not have. So I'm just saying, assume that they showed those things. Why wouldn't that itself be enough to establish, under his view, that the reason you have these duties is to prevent flooding? You breached the duties, so it seems obvious that it's going to exacerbate the flooding. Well, causation isn't duty. And I know the plaintiffs have started from the premise that if they can establish a negligence per se violation, that all of a sudden causation should also be bootstrapped into that. Why isn't the point in the key word in Judge Murphy's question exacerbate? And I thought that's what counsel on the other side was saying. Why isn't it self-evident that it would make it worse? So I think in his view of exacerbation, he described, for example, that the man-made disturbances, the mining operations, would have somehow increased peak water flow, increased the velocity of water flow. Those are things that are way outside of a lay witness's ability to observe, and also outside of a juror's ability. You must have expert testimony in order to establish that those peak flows would have been increased by velocity. Is that a notion that you need expert testimony for things that are outside a lay person's understanding? Is that a federal question of Rule 56 in which you create a genuine issue of material fact? Or is that a state law question about Kentucky negligence law? I've always been confused by that. So federal courts throughout, in the Sixth Circuit and other circuits, have held that when a plaintiff pursues a complex flood theory case like this one, which is that somehow the man-made disturbances in this complex region somehow exacerbated the flooding that occurred, they have to have an expert. And unsurprisingly. I'm curious about the source of the rule. That's what I was asking about. Is the source of the rule just Kentucky common law? And that's what we're applying here. Because it's a substantive rule? Or is it a procedural rule in order to get to a jury and then get past Rule 56? Well, I think it's definitely a procedural rule under 702 as far as whether or not that can get to a jury. That's the gatekeeping function by the district court. They have to make that decision. But substantively, Kentucky cases have also said you have to have expert testimony for a proper understanding of that which requires scientific or specialized knowledge and which cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life. So whether you're talking about a 702 federal rule or under the Kentucky substantive rules, I think we're covered both ways on that. Just a quick question. My diligent law clerk had pointed out that maybe neither of you can answer on the spot. But maybe you could just make sure we're not missing something. I think the odds are high. We do have diversity jurisdiction here. But it turns on domicile. And your last or their last amended complaint talks about saying plaintiffs or the key plaintiffs are residents of our own property in the area. That doesn't establish their domicile in Kentucky. So anyway, maybe both of you together can make sure we're not missing something here. If we don't hear from you in the next week, maybe just let us know. Yes, Your Honor. I think it's likely they're domiciled there is my guess. But it's not what it says in the complaint. Yes, Your Honor. I mean, they are domiciled in Kentucky. That is the basis for the diversity jurisdiction because our ultimate parent is Delaware and also principal. I'm talking about the plaintiffs. Right, there's no plaintiffs in Delaware. No, no, no. I'm making the point. I know this is not your problem. But you're an officer of the court. And I'm starting with you. We need to make sure the plaintiffs are domiciled in Kentucky. I understand, Your Honor.  Yeah, because it's Delaware and the Czech are on your side. That's right.  And I don't, I mean, I know that we deposed a number of the plaintiffs and all the plaintiffs that we deposed were domiciled in Kentucky as part of that. OK, how many plaintiffs are there? At various times, there have been a various number of plaintiffs in the case. Some of them were dismissed for discovery violations or because counsel could not get a hold of them to pursue their claims. Those plaintiffs did not appeal. But this is not a class action. It is not a class action. And so some of the affected plaintiffs that were still in the case did appeal here. Some did not. So there are fewer appellants than there were plaintiffs. Can I ask, switching gears to the duty element, it's not obvious to me why, what's the theory of the Court of Appeals, or what would be the theory for why you need the regulatory agency to issue a final order of a violation before you can bring a negligence per se claim? Negligence per se claims have been around for a long time. I mean, they can be of statutes. We've never suggested that, or at least, I mean, this depends on Kentucky law, of course. But the way I understand it, you can bring a negligence per se claim, say, for the violation of a criminal statute, without the prosecutor having convicted the individual. So why would the fact that it's a regulation be different? What's the theory for why this final order of the enforcer is necessary before you can bring a negligence per se claim? So I'll start with the appellants, we believe, forfeited or waived any right to challenge that, because they didn't raise it when we raised it in our motion for summary judgment. The district court did find that an alleged mining violation, like such here, cannot be the basis for a civil negligence per se claim unless there's a final order. And the reason for that under Vanderbilt is because the legislature deemed it prudent to delegate to the cabinet, and in particular the secretary, the sole responsibility for determining whether or not there has been a violation of a mining regulation like this. Vanderbilt went through that whole process in relation to a lease dispute, but it also dropped a footnote and made very clear in that footnote that for this particular situation, where a plaintiff is alleging a mining violation, that they cannot pursue a negligence per se claim unless there's been a final order. And the only one who can enter that final order is the secretary. And that's not a situation that we have. So is it unique under Kentucky administrative law to have this requirement of a final order just for mining regulations? Does that carry over to other regulations under Kentucky law? Well, I think we've got to take Vanderbilt for its ruling, which was in relation specifically to... Are you aware of any other authority under Kentucky law that would apply this final order rule to other types of regulations? No, Your Honor. Candidly, I... The parties didn't cite it, I don't think. But there is a private right of action under the Surface Coal Mining Act itself. It says, any person who is or may be adversely affected by the violation by any person of any rule, regulation, order, or permit issued pursuant to this chapter may bring a civil action for injunctive relief or for damages or both. It would seem strange if we're talking about statutory interpretation. Would your theory require that person to have there to have been a final order before that person could sue? I don't know if you know the provision I'm talking about. So perhaps this is an unfair question, so forgive me. But I did find it in the Surface Coal Mining provisions. And it's like a private right of action separate from any negligence claim. It just says, a person adversely affected can sue. Sure, I think Vanderbilt gave a roadmap in a couple of ways. It gave the roadmap for the issue that Mr. Pillersdorf is complaining of, which is the cabinet wasn't acting fast enough. Vanderbilt says specifically, if you think that's occurring, go to the court and compel the cabinet to act faster. It also, and that regulation does have the private right of action to bring a claim, right? But essentially, that's what's essentially what they want. Would you concede that to bring a claim, you don't actually have to have a final order by the cabinet under this provision? I would not concede that, Your Honor. You think that there would be? It doesn't say it in them. Is that an exhaustion point? Is that the only way that private right of action works? For a negligence per se claim for an alleged violation of a mining regulation, I think the courts and the legislature have given mining companies the due process right to challenge the individual inspector's allegation of a violation. We get to go have a hearing. We get to go. The right of action, I'm just trying to understand this, is this is an exhaustion point. You have to make sure there really is a problem before you go to state court? That's right. I think that is absolutely correct. They have to get a final order from the cabinet and the secretary. And I think Vanderbilt couldn't be more clear on that point. And you can't invoke this provision Judge Murphy's talking about without exhaustion? Is that the point? I think you have to have a final order in order to invoke that provision. I think you should. I mean, I think that's the reading of Vanderbilt. But nothing would have prevented them from bringing the ordinary negligence claim that you all have raised, that they didn't bring and provided no evidence of a breach of any sort of duty. And of course, no causation. OK. I think we understand your argument. Thank you, Your Honor. Mr. Pihlersdorf, you've still got some time. Talk about causation a little bit. Your Honor, in terms of causation, we would point to our expert's report, which specifically says, the surface mining activities and an adequate regulation increase the intensity and frequency of the flooding. I think it's common sense. I think their representative grudgingly agreed there's a public safety issue when you don't comply. How much, if they had done what they're supposed to do and had 90% reclamation, would the velocity of the water changed if there had actually been vegetation down? They did nothing for two and a half years. And I do want to suggest this notion that we need a final order. There is no way my clients could make the cabinet do a final order. The way they responded to the multiple notices of violations, they sent in one sentence, we need more time to reclaim, and the cabinet gave it to them. We hold the cabinet just as responsible as anybody else. There is no enforcement of the law. And a suggestion that you need a final order, there's a thing called a statute of limitations. This thing went on for years. It's a one-year statute for wrongful death. There was never going to be a final order. Am I misreading that private right of action that I read? I'm sorry, Judge. Am I misreading the private right of action that I read to your friend on the other side? Is there a reason why you didn't sue under that private right of action? We thought it was so clear under Hargis v. Bays that there was this clear violation of the regulation. Well, that's why you have a private right of action that you can sue under and you don't need the negligence claim. I mean, we still believe that under Hargis v. Bays, if you violate a regulation, and finally, the Vanderbilt case, we just disagree that that case, that wasn't even an environmental case. That was a fight among trustees. And the idea that you need a final order from the cabinet before you can proceed in court, you could have the most egregious mining violations and there'd be no remedy. If that's the law, it's up to the cabinet. And in this case, they did nothing. They granted nine extensions over two and a half years and the amount of reclamation never changed despite the multiple notices. Anybody else have any questions? It's very hard to give up time. It seems almost like money, doesn't it? Well, sometimes we're very grateful when people think they've said what they came to say. So if you think you've said what you came to say. That's all I have. Thank you. All right. Thanks to both of you for your helpful briefs and oral arguments and for answering our questions. We always appreciate it. The case will be submitted.